THE PEOPLE, Ex rel. SMITH, Appellant, *v.* WILLIAM B. OLDS, Respondent.

A mandamus will not lie where there is any other specific, speedy, and adequate remedy.

The statute of this State is a re-affirmance of the principles of the common law, as regards the writ of mandamus, and sect. 468 provides, that it shall be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law,—*e converso,* it shall issue in no other.

*Title* to an office cannot be tried upon a mandamus, neither at common law, nor under the statute.

The Practice Act provides a remedy "against any person who usurps, intrudes into, or unlawfully holds or exercises, any public office, civil or military, or any franchise within the State."

A mandamus can give no right, but may be resorted to to put a party in a position to assert his right.

It will not lie where the office claimed is full, or against an incumbent *de facto,* unless the party be without remedy.

The distinction between the writs of mandamus and *quo warranto,* as held in England, is not abolished by the statutes of this State, but, on the contrary, is recognized.

APPEAL from the Fourth Judicial District.

The relator claimed to be duly elected to the office of Clerk of the Superior Court of San Francisco, and in his petition set forth, on oath, the grounds of his claim at length, and the proceedings taken by him, to qualify and obtain possession of the

records, papers, &c., connected therewith, of the defendant, then sitting and acting as Clerk of the said court, who protested against the claim of the relator, on account of the insufficiency of the evidence of his claim, as exhibited by him.  The relator further claimed damages from the defendant by reason of his unlawful withholding of the office, &c., $500.  And prays the court for an alternative mandamus to issue to the defendant, commanding him to turn over the records of the office to the relator, and to allow him to enter upon the discharge of the duties of said office, or show cause why he should not do so.

The court granted the writ.

The defendant, in his answer, takes divers exceptions to the form of the proceedings, and to the writ, and states these as cause of demurrer, and claims to hold the office, and exercise its duties, under the appointment of the Judge of the Court, and objects his joining a claim for damages in a mandatory suit, &c.; and denies the election of the relator to the office, and the sufficiency of the evidence produced by him to sustain his claim, &c.; and denies that the relator has any right to any fees received by him, or that he, the defendant, unlawfully holds the office, and excludes the relator.

And charges that the relator's election was a fraud upon the electors, and of no validity whatever; and, therefore, that the writ was wrongfully and improperly issued, and prays to be dismissed, and for judgment for costs, &c.

On the hearing of the case; the court gave judgment for the defendant, with costs, on the ground that "*this proceeding is not the proper remedy ;*" and the relator took this appeal.

*Bates* and *Gorham*, for relator.

The writ of mandamus is the proper writ or form of remedy, both at common law and under the statute of this State, for the admission of, and trying the right of, a party to an office, when the same is filled, and unlawfully withheld and precluded by another; and the court below erred in deciding that this writ was not the proper remedy.

3 Hen. & Mun. Rep.; 1 Virginia Sup. Ct.; 20 Pick. 495; 5 Hill Rep. 626; 3 Hill Rep. 4; Sect. 468, Cal. 1851, Prac.

Act; 3 Blacks. R. 265, 110, and note; 6 East's Rep. 362; 2 Esp. N. P. 666.

If the defendant disputes the title of the relator, and wishes to go behind the certificate of election, or the returns, under this proceeding he has ample remedy by the 472d and 476th sections of the Practice Act.

The distinction between the writ of quo warranto and that of mandamus in England, had its origin in the statutes of Anne and George I., which are not in force here. The distinction here is merely arbitrary, and is so held in the Virginia case; and this is so on both principle and reason. The statute of this State has given to the mandamus all the functions possessed by the quo warranto, and is intended to abolish all the nice distinctions between the two writs, and remove the boundaries existing between them. See Practice Act, 472d and 476th sections.

Our statute has made the writ of quo warranto a specific remedy, which it is not at common law. It has also given co-extensive functions to the writ of mandamus, and the reason and force of the rule, that whenever quo warranto will lie, mandamus will not, is destroyed by the statute. See the cases Casserly *v.* Fitch; The Virginia Case, 5 Hill, and 20 Pickering, above cited. And as the objection is technical, not affecting the merits, the statute should be liberally construed. The 467th section points out specifically the functions of the writ, and in the latter clause of the section, the case of the parties before the court is provided for.

*Cooke*, for defendant.

The relator has mistaken his remedy; the writ of mandamus lies only in cases where it is necessary to prevent a failure of justice, and where there is not a plain, speedy, and adequate remedy in the ordinary course of law. Civil Practice Act, § 408; 3 Barr, 1265; People *v.* Moyer, 2 Hill, 10, 13 (as to all extraordinary writs); 2 Hill, 27; Ib. 367; 1 Hill, 198; Ib. 674; 13 Pet. 279; Ib. 404; 2 Johns. Cas. 217, 7; 15 Pet. 9; 10 Johns. 484; 10 Wend. 393; 5 Hill, 616; 6 Ib. 243; 2 Cow. 444.

Mandamus gives no right; it lies only to put a party in a position to assert his right, where, without that, he could not do so.

3 Shep. N. P. 2291; Stra. 538; 3 Burr. 1421; 2 Stra. 893, 7; Rol. Abr. sect. 4, 8, 7; and see 2 Johns. Cas., 2d ed., 217, 256.

It will not issue to put one into an office already full. 3 Shep. N. P. 2294, 5; Ib. 217; 2 Johns. 217.

And the return of the defendant that he is the incumbent of the office, in by a valid appointment, and not lawfully ousted, is a good return.

The remedy of quo warranto is the only one to try the title in this case. 3 Johns. Cas. 79; 5 Hill, 619; Angel and Ames on Corp. 639; 3 Term Rep. 259; 3 Burr. 1454; 4 Ib. 2011; 3 B. & A. 592; L. & E. Rep. 361.

WELLS, Justice, delivered the opinion of the court. HEYDEN-FELDT, Justice, concurred.

This is an application for an alternative mandamus to the defendant, to compel him to hand over to the relator the books and papers of the office of the Clerk of the Superior Court of the City of San Francisco, and to allow him to enter upon the discharge of said office, to which he claims to have been elected.

To the general allegations contained in the application of the relator, the defendant filed a general demurrer, on the ground that the relator should have sought his remedy against the defendant by an action upon information in the nature of a *quo warranto*, and not by a writ of *mandamus;* and also a general answer denying the facts on which the election is claimed; to which the relator has demurred and also replied.

The court below sustained the demurrer and dismissed the petition, on the ground that the proceeding by mandamus was not the proper remedy, and we are asked on appeal to reverse this decision.

It is contended, on the part of the appellant, that the writ of mandamus is the proper remedy both at common law and under the statute of this State; that the statute is explicit, and gives this remedy in precisely such a case as this.

At common law, the proceeding by mandamus was employed as a supplemental and extraordinary writ of a remedial character, and was resorted to early in the annals of English jurisprudence,

from the necessity of establishing a residuary method to be used on occasions where the law had provided no other remedy, and where in justice there ought to be one; upon the principle that no right should be without a remedy. According to Lord Mansfield, "If there be a right and no other specified remedy, it will not be denied; in fact, where there is a right to execute an office, perform a service, or exercise a franchise, more especially if it be a matter of public concern, or attended with profit, and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy, the court will interpose by mandamus." Rex *v.* Barker, 3 Burr. 1266, 1267. By means of this supplementary remedy, also, inferior officers and tribunals are forced to perform their duties. Blackstone describes this writ as, in general, a command issuing in the name of the sovereign authority from a superior court, and directed to any person, corporation, or inferior court of jurisdiction within the jurisdiction of such superior court, requiring them to do some particular thing therein specified, which appertains to their office and duty. But all the authorities agree, that it lies only to prevent a failure of justice, and where there is not a specific remedy in the ordinary course of law. To authorize its use, there should not only be a want of specific legal remedy, but also there should be a specific legal right (see case of Fish *v.* Weathemore, 2 Johns. Cases, p. 217, 6 notes), and the right must be perfect, not inchoate. The People *v.* The Trustees of the City of Brooklyn, 1 Wend. 318. It is a rule of general application, that where there is any other specific legal remedy for the party complaining, the writ of mandamus will not lie. But where there is no other adequate specific remedy, resort may be had to this high judicial writ. Per Morton, J. 20; S. Pick. J. 495. In The People *v.* Stephens, 5 Hill, 626, a case similar in many respects to the present, being a proceeding where the relator claimed to be the Clerk of the City of Brooklyn, and sought by this writ, to be put in possession of the books and papers belonging to the office, while the defendant was actually in the possession of the office under color of lawful right to hold it, BRONSON, Justice, in delivering the opinion of the court, remarks, that " where the party has another specific remedy, a mandamus will not be granted. This

(he says) has been decided a hundred times, and the rule is so well settled that it would be a waste of time and paper to cite the books. Many of the cases are collected in Angel and Ames on Corp. 577–8, 2d ed.:" and Judge COWEN, without passing upon the other questions, concurred in giving judgment for the defendant on the express ground, " that the relator, if he was clerk, had another specific legal remedy for obtaining the books and papers." It is still insisted that many authorities are the other way, and according to Mr. Dane, 6 Davis's Abr. 326, the authorities, both English and American, are much in favor of mandamus, especially the more modern cases; and prominent among the cases cited, and upon which the relator most confidently relies, is that of Dew v. The Judges of Sweet Springs, &c., 3 Hen. & Munf. p. 1. We have carefully examined all the authorities cited by the appellants upon this subject, within our reach, and have found that in no case where the writ of mandamus has been suffered to go, has it appeared that there was any other more speedy or adequate remedy. In the Virginia case, as Judge BRONSON properly suggests, 5 Hill. 626, it did not appear that the relator had any other adequate remedy, and indeed the decision rested upon the ground, that there was no other remedy so well adapted to the nature of that case ; and generally, where the authorities are claimed to be in favor of mandamus, it will be found that they arise when *quo warranto* is not regarded as affording a *specific* remedy; and, indeed, it may be said, that all the exceptions to .the general rule depend upon an absence of another specific, adequate, or speedy legal remedy, or arise from the nature of the remedy which is to exclude the application of the writ; as, for example, where such remedy is incompetent to afford relief to the applicant upon the very subject-matter of his application. Therefore, it has been said, that if the party have another speedy, specific legal remedy, yet if it be obsolete, as *in assize*, this writ will lie; so, also, if such remedy be extremely tedious (as it sometimes occurs, where it is by quo warranto), it will lie, since in such cases the remedy is inadequate to do justice. 10 Wend. 396, per Nelson, al. And it is said that mandamus is the proper process for restoring a person to an office from which he has been unjustly removed ; but that is where, for example, a person has

been removed from an office by a corporation without authority, or where a court has unlawfully removed a clerk; for in such case there is no other specific remedy, and it is used to compel the corporation or court to do right, and to restore the party to an office from which he has thus been removed. Such was the purpose for which it was resorted to in the Virginia case; it was to restore the relator to an office he had once exercised and enjoyed, to which his title was clear, and of which he had been unlawfully deprived by the judges. In the case in 20 Pick., cited by the appellant, the relator asked for a mandamus to compel the Board of Examiners to give him a certificate of election, and it was granted, upon the ground that no other remedy would reach the evil; but it was expressly stated by the court that it would not have been granted had there been any other adequate specific remedy.

Judge NELSON, whose dissenting opinion, in 5 Hill, is relied upon by the appellants, has repeatedly maintained this doctrine. See 10 Wend. 395. He says, "The proposition is, I believe, universally true, that the writ of mandamus will not lie in any case where another legal remedy exists, and it is used only to prevent a failure of justice." He further observes: "The principle which seems to lie at the foundation of applications for this writ and the use of it is, that whenever a legal right exists, the party is entitled to a legal remedy, and when all others fail, the aid of this may be invoked." And he cites as authority upon this point, 3 Burr. 1267; 1 T. R. 404; 3 Ib. 651; Cowper, 378; Per BULLER, J., 4 Bacon Abr. tit. Mandamus, 496; 12 Johns. 415; 19 Ib. 259; 1 Cowp. 419. Again, in 25 Wend. 680, NELSON, (then Chief Justice), says, "After full consideration, I feel persuaded that the relator has a perfect legal remedy by action, which upon settled principles forbids a resort to the writ of mandamus."

Indeed, all the cases cited by the appellants, and which it is claimed overrule this position, will be found to depend upon the ground that no other remedy is adequate, specific, or proper; and the conclusion at which we have arrived is, that the established rule of the common law upon this subject stands unshaken and unimpaired by any of the modern cases. But if any doubt can remain upon this question, or if the mere weight of authority,

either as regards the number of authorities, or the respectability of their source, is against the proposition, the statutes of this State unquestionably settle the point beyond all further controversy.

The statute, which we regard as an embodiment and re-affirmance of this view of the principle of the common law, provides, sect. 468 of the Practice Act, that "This writ shall be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." And, *e converso*, it shall issue in no other. The ground assumed by the appellants, is, that although another remedy, plain, adequate, and speedy, in the ordinary course of law, does exist, still resort may be had to this writ. We cannot admit that such was the intention of the legislature in framing this enactment, but conceive that it was intended to give statutory authority and validity to a process which is regarded as a remedy of an extraordinary and supplemental character, and to define its functions and limit its power in accordance with the recognized and established principles of the common law; and, viewed in this light, it is in perfect harmony and consonance with those principles.

But there is another reason why mandamus should not be resorted to in a case like the present; and as this appeal has been urged with much earnestness, we propose to review this question in all its bearings, believing that public policy and public security can best be subserved by a final disposition of this matter, and in order, not only that the questions involved in this instance shall be fully considered, but that fruitless litigation may hereafter be avoided in similar cases.

This is professedly a proceeding under the statute of this State to compel the admission of the relator to the use and enjoyment of an office, to which he is *entitled*, and from which he is *unlawfully* precluded, but in reality, it is a proceeding to try the title to the office; both parties claiming it, and the defendant, who has been admitted and sworn, being in possession, and contending that he is the lawful incumbent. The relator demands the writ of mandamus, to compel the defendant to hand over to him the books and papers, and to allow him to enter upon the discharge of the duties of the office, upon the ground that he is

*entitled* to it, and that he is *unlawfully* precluded from the enjoyment of it by the defendant.

In the first place, this cannot be said without begging the question of title, and while the defendant is actually in possession of the office, duly sworn and admitted, and exercising the duties as officer *de facto, he* is *prima facie* entitled to it : such is the presumption of law; and in the second place, while the defendant is thus in the office, under the color of lawful right, and claiming to be the lawful incumbent, his title to the office cannot be tried upon mandamus ; and thirdly, the statute has provided a plain, speedy, and adequate remedy at law by the Practice Act, which provides for an action " against any person who usurps, intrudes into, or unlawfully holds or exercises, any public office, civil or military, or any franchise within the State."

We consider that it is a well-settled rule of the common law, that the title to an office cannot be tried by mandamus. A mandamus can give no right, not even the right of possession, although it may enforce one. It may be resorted to for the purpose of putting a claimant in a position to assert his right, when without that, he could not do so. It may be used to compel an officer of an election to give a claimant a certificate of his election, but this, if he obtains it, will not necessarily oust the incumbent, or give the claimant possession of the office. So, too, it will lie upon the application of a person showing a *prima facie* right to an office, who seeks to have the proper oath of office administered to him, to the end that it may place him in a condition to assert his legal rights, but he would still have to resort to quo warranto to oust the incumbent and get possession of the office.

The authorities to sustain the position, that mandamus will not lie, when the office is full, are very numerous, but we propose to cite only a few of them. The whole subject has been considered in the notes appended to the report of Fish *v.* Matheneux, in 2 Johns. Cases, 217, in which, among others, is cited the following :—" Though a mandamus to admit to an office, gives no title, yet it will not be granted, when there is an officer *de facto,* though that officer be in under a temporary mandamus, obtained by collusion and claim under the same election with the applicant; for the remedy is, to try the title to the office *de facto*

or on information in the nature of a quo warranto." Angel and Ames on Corp. 3d ed. 639.

"A mandamus to a Mayor to admit one to the office of Recorder, was refused, because there was a Recorder *de facto*, and it was therefore a decisive answer to the application, that there was another remedy, by an information in the nature of a quo warranto, by which the title of the officer in possession could be tried." Rex *v.* Mayor of Colchester, 2 Term, R. 289. So of one to a Bishop, to compel him to license a curate of an augmented curacy, where there was a cross-nomination; for the party had a specific legal remedy by *quare impedit*. Rex *v.* Bishop of Chester, 1 T. R., 396. "If *quare impedit* does lie, mandamus does not," per Lord MANSFIELD, in Powel *v.* Milbank, Id. 397. But though an office be full, still if quo warranto does not lie, a mandamus will be granted, upon the principle that the party shall not be without a remedy. Rex *v.* Mayor of Colchester, *infra*. The American authorities also support this position. The case from 3 Johns. Ca. 379, is directly in point. The court there say, that "Where the office is already filled by a person who has been admitted and sworn, and is in by color of right, a mandamus is never issued to admit another person. The proper remedy, in the first instance, is by an information in the nature of a quo warranto, by which the rights of the parties may be tried." His authority is amply sustained by others. It is commented upon by Justice MORTON, in 20 Pick., but he does not rule against it, the case being decided upon another point; he, however, concurs with Mr. DANE, and refers to the Virginia case; but we have already sufficiently considered that authority. In The People *v.* Stephens, 5 Hill, BRONSON, Justice, says, after stating the facts of the case, "Enough has been stated to show that the relator proposes upon this writ of mandamus for the delivery of papers, to try the title to the office of Clerk. The relator has several difficulties to encounter, which I think insuperable; and in the first place, the defendant is actually in the office of Clerk under color of lawful right to hold it. A writ of mandamus is not the proper mode of trying it. The relator should have proceeded by an information in the nature of a quo warranto. In The King *v.* The Corporation of Bedford, a man-

damus was granted; but it was for the reason that a quo warranto would not lie in that particular case, and there was no other adequate remedy. The relator should first establish his right to the office, by a direct proceeding for that purpose, and then his right to the books and papers would follow as a matter of course."

There are other cases to show, that though an office be full, still if quo warranto does not lie, a mandamus will be granted; but this is upon the principle that the party shall not be without a remedy.

In the present case, it cannot be said that the relator is without a remedy. The statute is ample, and furnishes not only a specific, but adequate and speedy remedy. It was the intention of the propounders of the law, that it should be so, and we have not yet discovered that the remedy is deficient in any respect. Until it shall appear that the relator is without a plain, speedy, and adequate remedy, in the ordinary course of law, we must conclude that the mandamus was not proper in the premises, or appropriate to the relief sought. We cannot accede to the proposition, that the distinction between the two writs in force in England, and which are said to have originated under the statutes of Anne and George I., have been abolished by our statute; the very reverse of this is the fact, for not only is the distinction recognized, but if it had never existed at common law, it might truly be said to have been created by the language of our statute; and, conceding that the decision in the Virginia case, the dissenting opinion of Chief Justice NELSON, in 5 Hill, and the ruling of the Supreme Court of Massachusetts, in 20 Pick., shall be considered as sound law, yet they do not conflict with our interpretation of the statute of this State, which, as we have already said, provides an ample, speedy, and adequate remedy; especially so, since the construction put upon it by this court, in The People, ex relatione, Casserly *v.* Fitch.

It is finally urged, that, as the defence is technical, and does not address itself to the merits of the case, or the conscience and equity of the court, the statute regulating the issuance of a mandamus, ought to receive a liberal interpretation. In reply to this we have but to say, that the appeal is not brought upon the ground that equitable relief had been sought and denied, but

from a decision which it is asserted was erroneous in law, and we sit here to review the decision on questions of law alone, and to decide what the law is, to give a correct interpretation of the statute under which the relator has, by his own choice and selection, proceeded. For the purpose of affording relief to him, we are asked by this appeal, in effect, if not in terms, to proceed upon the maxim, *Boni judices est ampliare jurisdictionem*, as the learned judges in the Virginia case seem to have done, relying upon the peculiar character and circumstances of the case before them for their justification; but, with all due deference be it said, we cannot see how we can follow their example and conform to this maxim, in the present case, without a usurpation that would necessarily destroy alike the reason and justice of the maxim; for, how can we amplify the remedy by mandamus which is limited by statute, without assuming jurisdiction? The hardship of a particular case, or the difficulties which surround it, cannot be urged in justification of an innovation upon the settled rules of law, or the principle of correct interpretation, established by the experience and confirmed by the approbation of ages. We have no right, even if we had the inclination, to sweep away the established rules of law, or to enlarge the remedy provided and limited by the language of the statute, for the purpose of relieving the relator, by what is termed a " liberal interpretation;" to do so, would be to overstep the bounds of certainty, and wander forth in every case in pursuit of some new light to guide us in the path of justice.

After full and careful examination of this case, we are satisfied that the decision of the court below was correct, and therefore order that it be affirmed.